1    QUINN EMANUEL URQUHART
       OLIVER & HEDGES, LLP
2      John B. Quinn (Bar No. 90378)
       David Eiseman (Bar No. 114758)
3      Dominic Surprenant (Bar No. 165861)
4    50 California Street, 22nd Floor
     San Francisco, California  94111
5    Telephone:     (415) 875-6600
     Facsimile:     (415) 875-6700
6    Email:         johnquinn@quinnemanuel.com
                    davideiseman@quinnemanuel.com
7                   dominicsurprenant@quinnemanuel.com

8    Attorneys for Plaintiffs
     Tele Atlas N.V. and Tele Atlas North America
9
     WINSTON & STRAWN LLP
10     Dan K. Webb (*admitted pro hac vice*)
       George C. Lombardi (*admitted pro hac vice*)
11     David E. Koropp (*admitted pro hac vice*)
     35 W. Wacker Drive
12   Chicago, Illinois 60601
     Telephone:     (312) 558-5600
13   Facsimile:     (312) 558-5700
     Email:         dwebb@winston.com
14                  glombardi@winston.com
                    dkoropp@wintston.com
15
     Attorneys for Defendant
16   NAVTEQ Corporation

17              UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19                  SAN JOSE DIVISION          *E-FILED - 8/16/05*

20   TELE ATLAS N.V. and TELE ATLAS NORTH   )   CASE NO. C 05-1673 RMW
     AMERICA,                               )
21                                          )   **STIPULATION AND [PROPOSED]**
                         Plaintiffs,        )   **ORDER WITHDRAWING MOTION**
22                                          )   **TO DISMISS AND PERMITTING**
              v.                            )   **FILING OF FIRST AMENDED**
23                                          )   **COMPLAINT**
     NAVTEQ CORPORATION,                    )
24                                          )
                         Defendant.         )
25   _____  )

26

27

28

STIPULATION AND [PROPOSED] ORDER                1                        50871/86641.1
CASE NO. C 05-1673 RMW

## STIPULATION

WHEREAS:

A.     On April 22, 2005, Plaintiffs Tele Atlas N.V. and Tele Atlas North America ("Tele Atlas") filed a Complaint for Federal and State Antitrust Violations, Unfair Competition, and Intentional Interference (the "Complaint") against Defendant NAVTEQ Corporation ("NAVTEQ");

B.     On June 15, 2005, NAVTEQ filed a Motion to Dismiss Tele Atlas' Complaint and, on July 8, 2005, re-noticed the Motion to Dismiss to be heard on August 19, 2005;

C.     In an effort to avoid the time and expense associated with litigating the issues raised by NAVTEQ's Motion to Dismiss, and without admitting the validity of the other side's positions taken in the Complaint and/or the Motion to Dismiss, Tele Atlas and NAVTEQ have agreed that NAVTEQ will withdraw its Motion to Dismiss and Tele Atlas will file a First Amended Complaint for Federal and State Antitrust Violations, Unfair Competition, and Intentional Interference (the "First Amended Complaint").

Accordingly, IT IS HEREBY STIPULATED by and between Tele Atlas and NAVTEQ, through their respective counsel of record, as follows:

1.     NAVTEQ shall withdraw its Motion to Dismiss, without prejudice to its right to move to dismiss Tele Atlas' First Amended Complaint;

2.     Tele Atlas shall file and serve its First Amended Complaint in the form attached to this Stipulation and Order as Exhibit 1 within three days of the Court's entry of this Stipulation and Order;

1        3.     NAVTEQ shall file and serve its response to Tele Atlas' First Amended

2    Complaint within 21 days of being served with the First Amended Complaint.

3

4    Dated:  August 15, 2005                    QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP

5

6                                    By:  /s/ David Eiseman
                                     David Eiseman

7

8                                    Attorneys for Plaintiff Tele Atlas N.V. and
                                   Tele Atlas North America

9

10   Dated:  August 15, 2005                    WINSTON & STRAWN LLP

11

12                                   By:  /s/ David E. Koropp
                                     David E. Koropp

13

14                                   Attorneys for Defendant
                                   NAVTEQ Corporation

15

16

17                          **ORDER**

18

19        PURSUANT TO STIPULATION, IT IS SO ORDERED.

20

21   DATED:  August 16_____, 2005

22

23                                 /s/ Ronald M. Whyte

24                                 The Honorable Ronald M. Whyte
                              United States District Judge

25

26

27

28

# EXHIBIT 1

QUINN EMANUEL URQUHART
 OLIVER & HEDGES, LLP
 John B. Quinn (Bar No. 90378)
 David Eiseman (Bar No. 114758)
 Dominic Surprenant (Bar No. 165861)
 William A. Morehead (Bar No. 233361)
 50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700
Email:          johnquinn@quinnemanuel.com
                davideiseman@quinnemanuel.com
                dominicsurprenant@quinnemanuel.com
                williammorehead@quinnemanuel.com

Attorneys for Plaintiffs
Tele Atlas N.V. and Tele Atlas North America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TELE ATLAS N.V. and TELE ATLAS NORTH AMERICA,<br><br>                     Plaintiffs,<br><br>          v.<br><br>NAVTEQ CORPORATION,<br><br>                     Defendant. | CASE NO. C 05-1673 RMW<br><br>**FIRST AMENDED COMPLAINT FOR FEDERAL AND STATE ANTITRUST VIOLATIONS, UNFAIR COMPETITION, AND INTENTIONAL INTERFERENCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Tele Atlas N.V. and Tele Atlas North America (collectively, "Tele Atlas") complain in this action against Defendant NAVTEQ Corporation ("NAVTEQ") as follows:

## INTRODUCTION

1.      Tele Atlas and NAVTEQ license digital map data to makers of navigation devices.

2.      This case is about NAVTEQ's response to Tele Atlas' attempts to enter NAVTEQ's monopoly market, which constitutes an illegal attempt to maintain its monopoly. This case is also about NAVTEQ extending its monopoly power into related but distinct relevant markets by anticompetitive conduct intended to throttle competition and thereby harm consumers.

3.      NAVTEQ's conduct has all the hallmarks of the illegal behavior in which monopolists engage to block market entry that, if successful, would bring lower prices, higher quality, and more choice to consumers in the market.  By way of example, NAVTEQ has raised unnecessary technical hurdles to Tele Atlas' attempted entry.  It has locked up Tele Atlas' potential customers with longterm contracts.  It locked up the Automotive Association of America ("AAA") account by literally giving data away for free to AAA for up to two years.   It has tied up important consumer outlets by lavishing them with eye-popping displays on the condition that they lock Tele Atlas' quality competitive products out of the stores.   It has illegally tied access to licenses to its patents to customers purchasing its map data.  The victim of this coordinated course of anticompetitive conduct is not only Tele Atlas; it is also consumers, here in the United States and throughout the world, who pay higher prices and have more restricted choices than they would absent NAVTEQ's illegal conduct.

## THE PARTIES

4.      Plaintiff Tele Atlas N.V. is a corporation organized under the laws of the Netherlands, with business operations in California.

5.      Plaintiff Tele Atlas North America is a corporation organized under the laws of California, with business operations in California.

6.      Tele Atlas is informed and believes and on that basis alleges that Defendant

1  NAVTEQ is a corporation organized under the laws of Delaware, with business operations in

2  California.  Tele Atlas is informed and believes and on that basis alleges that until May 2005,

3  approximately 35% of NAVTEQ was owned by Philips Consumer Electronics Services B.V., a

4  Netherlands corporation.

5  **JURISDICTION AND VENUE**

6  7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

7  1337, and 15 U.S.C. § 15.  This Court has supplemental jurisdiction pursuant to 28 U.S.C.

8  § 1367.

9  8.      This Court has personal jurisdiction over NAVTEQ by virtue of its business

10  activities in this jurisdiction.

11  9.      Venue is proper in this Court pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391.

12  **INTRADISTRICT ASSIGNMENT**

13  10.      This action is appropriate for assignment to the San Jose division of this Court

14  because a substantial part of the events that give rise to the claims in the action occurred in

15  counties located within the San Jose division of this Court.

16  **THE RELEVANT MARKETS**

17  11.      For purposes of this Amended Complaint, the relevant geographic market is the

18  United States.

19  12.      For purposes of this Amended Complaint, the relevant technology market consists

20  of methods for displaying portions of a topographic map on a personal navigation device from an

21  apparent perspective view outside and above a vehicle in the United States (the "Perspective

22  Navigation Display Technology Market").

23  13.      NAVTEQ currently maintains monopoly power in the Perspective Navigation

24  Display Technology Market.

25  14.      For purposes of this Amended Complaint, there are three relevant product

26  markets.

27  15.      One relevant product market consists of licenses to digital map data for use in

28  navigation devices (the "Navigation Device Market").  NAVTEQ's market share in the

1   Navigation Device Market is approximately 75 percent.

2   　　　16.    Another relevant product market consists of licenses to digital map data for use in

3   navigation devices that are intended for permanent installation in automobiles (the "Embedded

4   Device Market").    NAVTEQ's market share in the Embedded Device Market is approximately

5   95 percent.

6   　　　17.    A third relevant product market consists of licenses to digital map data for use in

7   personal navigation devices, including handheld devices as well as devices that may be affixed

8   onto or near a car's dashboard (the "PNV Device Market").    NAVTEQ's market share in the

9   PNV Device Market is approximately 70 to 75 percent.

10  　　　18.    The following diagram illustrates the relationships between these three relevant

11  product markets:



19  　　　19.    The Navigation Device Market is illustrated by the entire diagram.    The

20  Embedded Device Market is illustrated by the "licensed data" arrow originating from the

21  "Licensors of Digital Map Data For Use in Navigation Devices" box and terminating at the

22  "Embedded Device Makers" box.    The PNV Device Market is illustrated by the "licensed data"

23  arrow originating from the "Licensors of Digital Map Data For Use in Navigation Devices" box

24  and terminating at the "PNV Device Makers" box.

25  　　　20.    A reasonable jury could find that the Embedded Device Market and the PNV

26  Device Market are the relevant product markets in this case.    In reaching this conclusion, a jury

27  would likely consider, among other things, the pricing structure that dominates the Embedded

28  Device Market and the PNV Device Market.    A substantial gap exists between the price

1  NAVTEQ charges embedded device makers and the price NAVTEQ charges PNV device

2  makers for licenses to digital map data – specifically, NAVTEQ charges considerable premiums

3  in the Embedded Device Market (as do other vendors, under the price umbrella established by

4  NAVTEQ, the dominant incumbent in all three markets).

5       21.    Alternatively, a reasonable jury could find that the Navigation Device Market is

6  the only relevant product market in this case.  In reaching this conclusion, a jury would likely

7  consider, among other things, that the map data licensed to embedded device makers is

8  substantially the same as the map data licensed to PNV device makers, and that the same

9  licensors supply digital map data to both embedded and PNV device makers.

10      22.    No matter which market definitions ultimately control, however, NAVTEQ has

11  engaged – and is continuing to engage – in anticompetitive conduct related to all three relevant

12  product markets.

13      23.    NAVTEQ has monopoly power in the Embedded Device Market and is illegally

14  maintaining its monopoly in that market.

15      24.    NAVTEQ has illegally acquired monopoly power in the PNV Device Market and

16  is illegally maintaining its monopoly in that market.  In the alternative, NAVTEQ is attempting

17  to monopolize the PNV Device Market, and there is a dangerous probability that NAVTEQ will

18  actually obtain an illegal monopoly in that market.

19      25.    NAVTEQ has monopoly power in the Navigation Device Market and is illegally

20  maintaining its monopoly power in that market.  In the alternative, NAVTEQ is attempting to

21  monopolize the Navigation Device Market, and there is a dangerous probability that NAVTEQ

22  will actually obtain an illegal monopoly in that market.

23      26.    There are barriers to entry related to all three relevant product markets that shield

24  NAVTEQ's monopoly and market power in those markets.  One such barrier is NAVTEQ's

25  "first mover" advantage.  NAVTEQ's entrenchment – although assumed lawful for purposes of

26  this Amended Complaint – is a material barrier to entry.  Another barrier is the conservative

27  business practices employed by auto makers and their vendors, who are generally hesitant to

28  switch to new products unless those products are well-established.  A third barrier is the amount

1   of time (on the order of years) and the amount of money (on the order of tens of millions of

2   dollars) that are required to create robust and competitive digital map data.

3       27.   Tele Atlas, however, has sufficient management and scientific skill, experience,

4   and capital to overcome these barriers to entry.  In recognition of that, NAVTEQ has been

5   engaging in anticompetitive conduct to raise new, substantial, artificial barriers to Tele Atlas'

6   attempted entry into the three relevant product markets described above.

7   **NAVTEQ'S ANTICOMPETITIVE CONDUCT**

8       28.   Through the anticompetitive conduct described below, NAVTEQ is (1) illegally

9   maintaining its monopoly in the Embedded Device Market, (2) illegally maintaining its

10   monopoly in or attempting to monopolize the PNV Device Market, and (3) illegally maintaining

11   its monopoly in or attempting to monopolize the Navigation Device Market.

12   **NAVTEQ monopolized and is illegally maintaining monopoly power in the Embedded**

13   **Device Market.**

14       29.   Etak, Inc. ("Etak"), founded in 1983, pioneered the development of digital map

15   data for use in navigation devices.  Tele Atlas is informed and believes and on that basis alleges

16   that Etak introduced the first consumer navigation system in 1985.

17       30.   That same year, NAVTEQ was founded to create and license digital map data in

18   the emerging market for navigation devices.  Tele Atlas is informed and believes and on that

19   basis alleges that for more than 10 years, Etak and NAVTEQ competed in the production and

20   licensing of digital map data.

21       31.   In 1996, Etak was acquired by Sony Corporation of America ("Sony").  Tele

22   Atlas is informed and believes and on that basis alleges that by 1997, Sony severely limited its

23   investment in Etak.   Tele Atlas is informed and believes and on that basis alleges that as a result,

24   Etak quickly lost the ability to remain competitive in the production and licensing of digital map

25   data, and NAVTEQ soon became the predominant licensor of digital map data to navigation

26   device makers.

27       32.   In 2000, the remnants of Etak were purchased by Tele Atlas, and Tele Atlas North

28   America was formed to produce and license digital map data in North America.

33.    Between 2000 and 2002, Tele Atlas made substantial investments in order to upgrade Etak's outmoded digital map data so that it would once again be competitive.  As part of this effort, Tele Atlas field collectors drove over roads covering more than 55% of the populated regions in the United States, and Tele Atlas "image-attributed" areas covering over 80% of the populated regions in the United States.

34.    In January 2003, Tele Atlas introduced its Tele Atlas MultiNet North America product – a map database of North America that supported routing applications to provide precise, efficient, legal, and physically reliable turn-by-turn directions.  In addition to incorporating high accuracy, extensive coverage, and detailed content, Tele Atlas' product also featured links to real-time traffic coverage and included a wide-range of "points of interest" such as gas stations, hotels, and airports.

35.    Tele Atlas continued to dedicate substantial resources in order to upgrade and improve its products.  By the beginning of 2004, Tele Atlas field collectors had driven over roads covering more than 80% of the populated regions in the United States, and Tele Atlas had image-attributed areas covering over 80% of the populated regions in the United States.  Starting in early 2004, the quality of Tele Atlas' digital map data was at least commensurate with – and in some respects superior to – the quality of NAVTEQ's digital map data.

36.    Nonetheless, NAVTEQ has continued to maintain at least a 95% share of the Embedded Device Market.  NAVTEQ has maintained this monopoly illegally by engaging in anticompetitive conduct.  For example, Tele Atlas is informed and believes and on that basis alleges that NAVTEQ has blocked Tele Atlas' entry into the Embedded Device Market by entering into contracts with automakers that effectively require embedded device makers to license NAVTEQ data.  Once an automaker agrees to support NAVTEQ, each supplier of embedded devices to that automaker must either license NAVTEQ data or lose the automaker's business.

37.    Absent NAVTEQ's anticompetitive conduct, automakers would not benefit from the presence of a monopolist in the Embedded Device Market.  Price competition among digital map data suppliers would lead to lower costs for embedded device makers, resulting in lower

1   costs for automakers and consumers.  NAVTEQ, however, engages in various schemes to entice

2   automakers to assist in effectively excluding Tele Atlas from the Embedded Device Market.  For

3   example, Tele Atlas is informed and believes and on that basis alleges that NAVTEQ is seeking

4   to raise its visibility among automakers by becoming the sole supplier of digital map data to the

5   AAA.  Tele Atlas is informed and believes and on that basis alleges that, to that end, NAVTEQ

6   has offered the AAA essentially a free license to NAVTEQ digital map data (nominally, the free

7   license is being offered in "recognition" of a limited investment in NAVTEQ that AAA made

8   and then sold over ten years ago).

9           38.     As a result of NAVTEQ's anticompetitive conduct, NAVTEQ has illegally

10  maintained monopoly power in the Embedded Device Market and excluded Tele Atlas from that

11  market.

12  **NAVTEQ illegally monopolized, or is illegally attempting to monopolize, the PNV Device**

13  **Market.**

14          39.     The PNV Device Market began to emerge in late 2002.  By that time, Tele Atlas

15  had made substantial progress toward producing digital map data competitive in price and

16  quality with NAVTEQ's digital map data.

17          40.     In an effort to monopolize the new PNV Device Market, NAVTEQ adopted the

18  same methods used to exclude Tele Atlas from the Embedded Device Market to exclude Tele

19  Atlas from the PNV Device Market.  Tele Atlas is informed and believes and on that basis

20  alleges that, specifically, NAVTEQ has entered into anticompetitive contracts with resellers of

21  PNV devices.

22          41.     Tele Atlas is informed and believes and on that basis alleges that, NAVTEQ has

23  also entered into anticompetitive contracts directly with PNV device makers.  Tele Atlas is

24  informed and believes and on that basis alleges that specifically, NAVTEQ structures licenses to

25  its map data so as to effectively prohibit Tele Atlas from competing in the PNV Device Market.

26  Tele Atlas is informed and believes and on that basis alleges that NAVTEQ requires its licensees

27  to make substantial up-front pre-payments against which future use of NAVTEQ map data may

28  be credited.  Tele Atlas is informed and believes and on that basis alleges that it often takes five

1  years or more for a PNV device maker to license a sufficient amount of map data to deplete the

2  up-front payment NAVTEQ requires.  As a result, Tele Atlas is precluded from competing for

3  the business of individual PNV device makers for years at a time.

4      42.    Moreover, because there is a consumer retail market for PNV devices, NAVTEQ

5  has also utilized retailers of electronics to assist in its efforts to exclude Tele Atlas from the PNV

6  Device Market.  For example, Tele Atlas is informed and believes and on that basis alleges that

7  NAVTEQ provides free sophisticated and eye-catching PNV device displays for those retailers

8  who agree to use those displays to exhibit only those PNV devices that incorporate NAVTEQ's

9  digital map data.

10     43.    Despite NAVTEQ's anticompetitive conduct, because Tele Atlas' attempted entry

11  into the PNV Market occurred while that market was still maturing, Tele Atlas was initially able

12  to make limited inroads into that market.

13     44.    Tele Atlas is informed and believes and on that basis alleges that as Tele Atlas

14  began to acquire customers in the PNV Device Market, NAVTEQ instituted a new mechanism

15  by which to thwart competition by Tele Atlas – illegally tying Perspective Navigation Display

16  Technology to the licensing of NAVTEQ's digital map data for use in PNV devices.  The details

17  of NAVTEQ's illegal tying are as follows.

18     45.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ

19  contacted two PNV device makers – Navman and TomTom – that licensed digital map data from

20  Tele Atlas.  NAVTEQ threatened those two PNV device makers with a patent infringement suit,

21  alleging that their navigation system applications infringed U.S. Philips Corporation's U.S.

22  Patent No. 5,161,886 (the "'886 Patent") and/or its foreign counterparts.

23     46.    The '886 patent was issued to U.S. Philips Corporation, a wholly owned

24  subsidiary of Royal Philips, on November 10, 1992.  Tele Atlas is informed and believes and on

25  that basis alleges that the '886 patent was subsequently licensed to NAVTEQ for use in PNV

26  devices.  The '886 patent purports to claim certain methods and devices for the perspective

27  display of a portion of topographic information on the surface of the earth.  For example, claim 1

28  of the '886 patent, as reexamined, purports to claim a method for the perspective display of a

portion of topographic information on the surface of the earth, including a surface portion on which a vehicle is capable of traveling, comprising:

> maintaining a data structure of topographic information of coordinates of points on the surface of the earth; selecting from said data structure a portion of the topographic information for display dependent on a current position of the vehicle on said surface portion; determining a position of an apparent point of view and viewing direction for said display, said apparent point of view being outside of the vehicle and above the position of the vehicle; performing a coordinate transformation of said selected topographic information to represent said selected information as would be seen from said apparent point of view in said viewing direction; and displaying within said vehicle said selected transformed topographic information as a perspective image.

'886 patent, as reexamined and issued on October 5, 2004, col. 1, lines 27-31, col. 2, lines 1-11.

47.     Tele Atlas is informed and believes and on that basis alleges that NAVTEQ represented to Navman and TomTom that they could avoid facing a patent infringement suit alleging past and continuing infringement by purchasing a patent license under the '886 patent and/or its foreign counterparts.

48.     Tele Atlas is informed and believes and on that basis alleges that NAVTEQ conditioned the purchase of such a patent license on the additional licensing of NAVTEQ's digital map data and/or directly tied the price of a patent license under the '886 patent and/or its foreign counterparts to the amount of digital map data that Navman and TomTom would agree to license from NAVTEQ.

49.     Tele Atlas is informed and believes and on that basis alleges that in response to NAVTEQ's coercive tactics, Navman purchased a patent license under the '886 patent and/or its foreign counterparts from NAVTEQ and agreed to the required associated licensing of NAVTEQ's digital map data for use in its PNV devices.

50.     Tele Atlas is informed and believes and on that basis alleges that TomTom initially resisted NAVTEQ's coercive tactics.  Tele Atlas is informed and believes and on that basis alleges that TomTom's attempt to withstand NAVTEQ's coercive tactics prompted NAVTEQ to follow through on its threat to file a complaint against TomTom for infringement of

one of the foreign counterparts to the '886 patent.  Tele Atlas is informed and believes and on

that basis alleges that as a result, TomTom ultimately succumbed to NAVTEQ's threats and

demands, agreeing to purchase from NAVTEQ both a patent license under the '886 patent and/or

its foreign counterparts and the required associated license to NAVTEQ's digital map data.

51.    Tele Atlas is informed and believes and on that basis alleges that there is no

efficiency or business justification for NAVTEQ's tying of a patent license under the '886 patent

and/or its foreign counterparts to the purchase of digital map data for use in PNV devices.  Tele

Atlas is informed and believes and on that basis alleges that instead, NAVTEQ understood that,

with NAVTEQ's monopoly power in the Perspective Navigation Display Technology Market,

NAVTEQ could foreclose the PNV Device Market to Tele Atlas and any other actual or

potential competitors by effectively requiring PNV device makers using Perspective Navigation

Display Technology to purchase their digital map data from NAVTEQ.

52.    As a result of NAVTEQ's anticompetitive conduct, Tele Atlas has been illegally

excluded from the PNV Device Market.

**NAVTEQ illegally monopolized, or is illegally attempting to monopolize, the Navigation**

**Device Market.**

53.    As a result of NAVTEQ's anticompetitive conduct described above, NAVTEQ

has illegally monopolized – or alternatively, attempted to monopolize – the Navigation Device

Market.

### FIRST CLAIM FOR RELIEF

**(Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1)**

54.    Tele Atlas realleges and incorporates by reference paragraphs 1 through 53,

inclusive, as though fully set forth in this paragraph.

55.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ has

orchestrated arrangements and entered into contracts that unreasonably restrain trade in the

Embedded Device Market, PNV Device Market, and Navigation Device Market, and has thereby

willfully excluded Tele Atlas from those markets.

56.    A not insubstantial amount of interstate commerce in the Embedded Device

1   Market, PNV Device Market, and Navigation Device Market has been – and continues to be –

2   affected by NAVTEQ's illegal conduct.  NAVTEQ's illegal conduct has harmed consumers.

3       57.     As a result of NAVTEQ's actions in violation of 15 U.S.C. § 1, Tele Atlas has

4   been injured and continues to be injured in its business and property in an amount to be

5   determined at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

6       58.     As a result of NAVTEQ's actions in violation of 15 U.S.C. § 1, Tele Atlas has

7   suffered and will continue to suffer irreparable harm, including but not limited to harm to its

8   business reputation and goodwill.  Tele Atlas is informed and believes and on that basis alleges

9   that NAVTEQ threatens to continue its wrongful actions, and unless restrained and enjoined, will

10  do so.  Tele Atlas' remedy at law is not by itself adequate to compensate Tele Atlas for the harm

11  inflicted and threatened by NAVTEQ.

12                          **SECOND CLAIM FOR RELIEF**

13          **(Violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2)**

14      59.     Tele Atlas realleges and incorporates by reference paragraphs 1 through 58,

15  inclusive, as though fully set forth in this paragraph.

16      60.     Tele Atlas is informed and believes and on that basis alleges that NAVTEQ is

17  willfully maintaining and abusing its monopoly in the Embedded Device Market, willfully

18  maintaining and abusing or attempting to obtain a monopoly in the PNV Device Market, and

19  willfully maintaining and abusing or attempting to obtain a monopoly in the Navigation Device

20  Market by, among other things, interfering with Tele Atlas' business dealings with customers in

21  those markets, entering into contracts that effectively require customers to deal exclusively or

22  predominantly with NAVTEQ, and tying the purchase of Perspective Navigation Display

23  Technology to the purchase of licenses for NAVTEQ's digital map data.

24      61.     NAVTEQ has monopoly power in the Embedded Device Market, has monopoly

25  power or is attempting to obtain monopoly power in the PNV Device Market, has monopoly

26  power or is attempting to obtain monopoly power in the Navigation Device Market, and has

27  monopoly power in the Perspective Navigation Display Technology Market.

28      62.     A not insubstantial amount of interstate commerce in the Embedded Device

1  Market, PNV Device Market, and Navigation Device Market has been – and continues to be –

2  affected by NAVTEQ's illegal conduct.  NAVTEQ's illegal conduct has harmed consumers.

3       63.    As a result of NAVTEQ's actions in violation of 15 U.S.C. § 2, Tele Atlas has

4  been injured and continues to be injured in its business and property in an amount to be

5  determined at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

6       64.    As a result of NAVTEQ's actions in violation of 15 U.S.C. § 2, Tele Atlas has

7  suffered and will continue to suffer irreparable harm, including but not limited to harm to its

8  business reputation and goodwill.  Tele Atlas is informed and believes and on that basis alleges

9  that NAVTEQ threatens to continue its wrongful actions, and unless restrained and enjoined, will

10  do so.  Tele Atlas' remedy at law is not by itself adequate to compensate Tele Atlas for the harm

11  inflicted and threatened by NAVTEQ.

12                **THIRD CLAIM FOR RELIEF**

13       **(Violation of Section 3 of the Clayton Act, 15 U.S.C. § 14)**

14       65.    Tele Atlas realleges and incorporates by reference paragraphs 1 through 64,

15  inclusive, as though fully set forth in this paragraph.

16       66.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ has

17  offered for sale and sold patent licenses under the '886 patent and/or its foreign counterparts on

18  the condition, agreement, or understanding that the purchaser of such patent license must also

19  license digital map data from NAVTEQ.

20       67.    NAVTEQ controls a predominant share of the Perspective Navigation Display

21  Technology Market.  Consequently, a not insubstantial amount of interstate commerce in the

22  PNV Device Market and the Navigation Device Market is affected.  NAVTEQ's illegal conduct

23  has harmed consumers.

24       68.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ has

25  entered into anticompetitive contracts with PNV device makers.

26       69.    NAVTEQ controls a predominant share of the PNV Device Market – or is

27  attempting to control a predominant share of the PNV Device Market.  Consequently, a not

28  insubstantial amount of interstate commerce in the PNV Device Market and the Navigation

1  Device Market is affected.  NAVTEQ's illegal conduct has harmed consumers.

2        70.  As a result of the actions of NAVTEQ in violation of 15 U.S.C. § 14, Tele Atlas

3  has been injured and continues to be injured in its business and property in an amount to be

4  proven at trial, which amount is to be trebled in accordance with 15 U.S.C. § 15.

5        71.  As a result of the actions of NAVTEQ in violation of 15 U.S.C. § 14, Tele Atlas

6  has suffered and will continue to suffer irreparable harm, including but not limited to harm to its

7  business reputation and goodwill.  Tele Atlas is informed and believes and on that basis alleges

8  that NAVTEQ threatens to continue its wrongful actions, and unless restrained and enjoined, will

9  do so.  Tele Atlas' remedy at law is not by itself adequate to compensate Tele Atlas for the harm

10  inflicted and threatened by NAVTEQ.

11  **FOURTH CLAIM FOR RELIEF**

12  **(Violation of California Business and Professions Code §§ 16720 and 16726)**

13        72.  Tele Atlas realleges and incorporates by reference paragraphs 1 through 71,

14  inclusive, as though fully set forth in this paragraph.

15        73.  Tele Atlas is informed and believes and on that basis alleges that NAVTEQ has

16  orchestrated arrangements and entered into contracts that restrict trade in the Embedded Device

17  Market, PNV Device Market, and Navigation Device Market, and has thereby willfully excluded

18  Tele Atlas from those markets.

19        74.  Tele Atlas is informed and believes and on that basis alleges that NAVTEQ is

20  willfully preventing competition in the Embedded Device Market, PNV Device Market, and

21  Navigation Device Market by, among other things, interfering with Tele Atlas' business dealings

22  with customers in those markets, facilitating the negotiation of contracts that effectively require

23  customers to deal exclusively or predominantly with NAVTEQ, and tying the purchase of

24  Perspective Navigation Display Technology to the purchase of licenses for NAVTEQ's digital

25  map data.

26        75.  A not insubstantial amount of interstate commerce in the Embedded Device

27  Market, PNV Device Market, and Navigation Device Market has been – and continues to be –

28  affected by NAVTEQ's illegal conduct.  NAVTEQ's illegal conduct has harmed consumers.

76.   As a result of NAVTEQ's actions in violation of California Business and Professions Code § 16720, Tele Atlas has been injured and continues to be injured in its business and property in an amount to be determined at trial, which amount is to be trebled in accordance with California Business and Professions Code § 16750.

77.   As a result of Defendants' actions in violation of California Business and Professions Code § 16720, Tele Atlas has suffered and will continue to suffer irreparable harm, including but not limited to harm to its business reputation and goodwill.  Tele Atlas is informed and believes and on that basis alleges that NAVTEQ threatens to continue its wrongful actions, and unless restrained and enjoined, will do so.  Tele Atlas' remedy at law is not by itself adequate to compensate Tele Atlas for the harm inflicted and threatened by NAVTEQ.

### FIFTH CLAIM FOR RELIEF

### (Violation of California Business and Professions Code § 16727)

78.   Tele Atlas realleges and incorporates by reference paragraphs 1 through 77, inclusive, as though fully set forth in this paragraph.

79.   Tele Atlas is informed and believes and on that basis alleges that NAVTEQ has offered for sale and sold patent licenses under the '886 patent and/or its foreign counterparts on the condition, agreement, or understanding that the purchaser of such patent license must also purchase digital map data from NAVTEQ.

80.   NAVTEQ controls a predominant share of the Perspective Navigation Display Technology Market.  Consequently, a not insubstantial amount of interstate commerce in the PNV Device Market and the Navigation Device Market is affected.  NAVTEQ's illegal conduct has harmed consumers.

81.   As a result of NAVTEQ's actions in violation of California Business and Professions Code § 16727, Tele Atlas has been injured and continues to be injured in its business and property in an amount to be proven at trial, which amount is to be trebled in accordance with California Business and Professions Code § 16750.

82.   As a result of NAVTEQ's actions in violation of California Business and Professions Code § 16727, Tele Atlas has suffered and will continue to suffer irreparable harm,

including but not limited to harm to its business reputation and goodwill.  Tele Atlas is informed

and believes and on that basis alleges that NAVTEQ threatens to continue its wrongful actions,

and unless restrained and enjoined, will do so.  Tele Atlas' remedy at law is not by itself

adequate to compensate Tele Atlas for the harm inflicted and threatened by NAVTEQ.

## SIXTH CLAIM FOR RELIEF

### (Violation of California Business and Professions Code § 17200)

83.     Tele Atlas realleges and incorporates by reference paragraphs 1 through 82,

inclusive, as though fully set forth in this paragraph.

84.     By its willful acts to exclude Tele Atlas from the Embedded Device Market, PNV

Device Market, and Navigation Device Market in violation of the federal and California antitrust

laws, NAVTEQ has engaged in unlawful and unfair business practices actions in violation of

California Business and Professions Code §17200.  Tele Atlas has suffered injury in fact and has

lost money or property as a result of NAVTEQ's illegal conduct.

85.     As a result of NAVTEQ's actions in violation of California Business and

Professions Code §17200, NAVTEQ has been unjustly enriched at Tele Atlas' expense.

Therefore, Tele Atlas is entitled to obtain an accounting and restitution from NAVTEQ in an

amount to be determined at trial.

86.     As a result of NAVTEQ's actions in violation of California Business and

Professions Code § 17200, Tele Atlas has suffered and will continue to suffer irreparable harm,

including but not limited to harm to its business reputation and goodwill.  Tele Atlas is informed

and believes and on that basis alleges that NAVTEQ threatens to continue its wrongful actions,

and unless restrained and enjoined, will do so.  Tele Atlas' remedy at law is not by itself

adequate to compensate Tele Atlas for the harm inflicted and threatened by NAVTEQ.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

87.     Tele Atlas realleges and incorporates by reference paragraphs 1 through 86,

inclusive, as though fully set forth in this paragraph.

88.     Tele Atlas has valid and existing contracts with Navman and TomTom pursuant

1 to which Tele Atlas granted Navman and TomTom licenses to use Tele Atlas' digital map data in

2 navigation system applications.

3      89.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ knew

4 that Tele Atlas entered into contracts with Navman and TomTom regarding the licensing of

5 digital map data.

6      90.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ knew

7 that its arrangement by which customers purchasing Perspective Navigation Display Technology

8 would be required to purchase digital map data from NAVTEQ would disrupt Tele Atlas'

9 contractual relationships.

10      91.    NAVTEQ has caused actual disruption to the contractual relationships between

11 Tele Atlas and its customers, including but not limited to Navman and TomTom.

12      92.    As a direct and proximate result of the actions taken by NAVTEQ in interfering

13 with Tele Atlas' contractual relationships, Tele Atlas has suffered and continues to suffer

14 damages in an amount to be proven at trial.

15      93.    In interfering with Tele Atlas' contractual relationships, NAVTEQ acted with

16 malice, fraud and oppression, and in conscious disregard of Tele Atlas' rights.  Accordingly,

17 Tele Atlas is entitled to recover exemplary damages in an amount to be proven at trial.

18      94.    As a result of the actions taken by NAVTEQ in interfering with Tele Atlas'

19 contractual relationships, Tele Atlas has suffered and will continue to suffer irreparable harm,

20 including but not limited to harm to its business reputation and goodwill.  Tele Atlas is informed

21 and believes and on that basis alleges that NAVTEQ threatens to continue its wrongful actions,

22 and unless restrained and enjoined, will do so.  Tele Atlas' remedy at law is not by itself

23 adequate to compensate Tele Atlas for the harm inflicted and threatened by NAVTEQ.

24 **EIGHTH CLAIM FOR RELIEF**

25 **(Intentional Interference with Prospective Economic Advantage)**

26      95.    Tele Atlas realleges and incorporates by reference paragraphs 1 through 94,

27 inclusive, as though fully set forth in this paragraph.

28      96.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ knew

1   that Tele Atlas had prospective contractual relationships with third parties.

2       97.    Tele Atlas is informed and believes and on that basis alleges that NAVTEQ

3   intended to harm Tele Atlas by interfering with Tele Atlas' prospective contractual relationships

4   with those third parties by engaging in the violations of the federal and California antitrust laws

5   described above.

6       98.    NAVTEQ has no justification or privilege to interfere with Tele Atlas'

7   prospective contractual relationships with third parties.

8       99.    As a direct and proximate result of the actions taken by NAVTEQ in interfering

9   with Tele Atlas' prospective contractual relationships with third parties, Tele Atlas has suffered

10   and continues to suffer damages in an amount to be proven at trial.

11       100.    In interfering with Tele Atlas' prospective contractual relationships with third

12   parties, NAVTEQ acted with malice, fraud and oppression, and in conscious disregard of Tele

13   Atlas' rights.  Accordingly, Tele Atlas is entitled to recover exemplary damages in an amount to

14   be proven at trial.

15       101.    As a result of the actions taken by NAVTEQ in interfering with Tele Atlas'

16   prospective contractual relationships with third parties, Tele Atlas has suffered and will continue

17   to suffer irreparable harm, including but not limited to harm to its business reputation and

18   goodwill.  Tele Atlas is informed and believes and on that basis alleges that NAVTEQ threaten

19   to continue its wrongful actions, and unless restrained and enjoined, will do so.  Tele Atlas'

20   remedy at law is not by itself adequate to compensate Tele Atlas for the harm inflicted and

21   threatened by NAVTEQ.

22

23

24

25

26

27

28

1

## **PRAYER FOR RELIEF**

2          WHEREFORE, Tele Atlas prays for judgment in its favor and against NAVTEQ

3  as follows:

4          A.      For treble damages in an amount to be determined at trial on the First, Second,

5  Third, Fourth, and Fifth Claims for Relief;

6          B.      For restitution damages in an amount to be determined at trial on the Sixth Claim

7  for Relief;

8          C.      For compensatory damages in an amount to be determined at trial on the Seventh

9  and Eighth Claims for Relief;

10          D.      For exemplary damages in an amount to be determined at trial on the Seventh and

11  Eighth Claims for Relief;

12          E.      For preliminary and permanent injunctive relief on the First, Second, Third,

13  Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief;

14          F.      For costs and attorneys' fees incurred in this action;

15          G.      For such other and further relief as the Court deems just and proper.

16

17  DATED:  August [], 2005

18

19                                    QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP

20

21

22                          By_____
                                      David Eiseman
23                                    Attorneys for Plaintiffs
                                      Tele Atlas N.V. and Tele Atlas North America

24

25

26

27

28

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Tele Atlas N.V. and Tele Atlas North America demand a trial by jury on all issues triable by a jury.

DATED:  August [], 2005

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP


By_____
       David Eiseman
       Attorneys for Plaintiffs
       Tele Atlas N.V. and Tele Atlas North America