E-filed on: **11/13/08**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TELE ATLAS N.V. and TELE ATLAS NORTH AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>NAVTEQ CORPORATION,<br><br>Defendant. | No. C-05-01673 RS<br><br>ORDER DENYING NAVTEQ'S MOTION FOR RECONSIDERATION AND DENYING NAVTEQ'S MOTION *IN LIMINE* REGARDING ANTICOMPETITIVE CONDUCT<br><br>**[Re Docket Nos. 288, 327]** |

Tele Atlas and NAVTEQ create and supply digital map data. Tele Atlas has accused NAVTEQ of, among other things, monopolizing markets for digital map data. Trial on these claims is scheduled for December 2, 2008.

The present motions address the scope of NAVTEQ's conduct that the jury may consider in determining whether or not NAVTEQ has willfully acquired or maintained its alleged monopoly or attempted to do so. The court raised the issue in its summary judgment order and suggested that Tele Atlas was entitled to introduce evidence of conduct other than the conduct supporting its exclusive dealing claims. The court granted NAVTEQ leave to move for reconsideration on this

point to brief the issue fully. NAVTEQ also moves *in limine* to exclude any evidence of its conduct that does not independently give rise to liability. Tele Atlas opposes the motions.

The court has reviewed the papers and considered the arguments of counsel presented at a hearing on November 12, 2008. For the following reasons, the court denies the motions.

## I.  NAVTEQ'S MOTION FOR RECONSIDERATION

### A.  The Scope of Section 2

Section 2 forbids the willful maintenance or acquisition of monopoly power. 15 U.S.C. § 2; *Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-08 (2004). That said, the possession of monopoly power alone is not only lawful; the dream of charging monopoly prices is the motivation causing businesses to innovate. *Id.* at 407. Thus, "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Id.* (emphasis in original). The vexing question is defining what is, and what is not, "anticompetitive conduct." The D.C. Circuit aptly noted that it "can come in too many different forms, and is too dependent upon context, for any court or commentator ever to have enumerated all the varieties." *Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1087 (D.C. Cir. 1998). Two principles defining the boundaries of "anticompetitive conduct" merit discussion given the allegations of this case. First, that "anticompetitive" conduct may include otherwise *legal* conduct. Second, courts must consider all of an alleged monopolist's related conduct in the aggregate.

The first point is clear from the past century's jurisprudence. For example, exclusive dealing arrangements that may not violate section 1 of the Sherman Act can still run afoul of section 2. *E.g., United States v. Microsoft*, 253 F.3d 34, 70-71 (D.C. Cir. 2001) (en banc) (per curiam). A businessman may legally refuse to do business, but even a refusal to deal can support section 2 liability in rare cases. *Trinko*, 540 U.S. at 407-08 (explaining cases); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) (affirming jury verdict of monopolization based on a refusal to deal). Section 2 must be flexible enough to encompass otherwise legal conduct because anticompetitive conduct can appear in so many shifting forms. On the other hand, "[m]istaken

inferences and the resulting false condemnations 'are especially costly, because they chill the very conduct the antitrust laws are designed to protect.'" *Trinko*, 540 U.S. at 414. The danger of falsely condemning legitimate conduct weighs in favor of restraint and hesitation before applying section 2 to otherwise lawful conduct. *Id.*

The second principle flows from the first. To appreciate the effect of otherwise lawful acts, the jury must consider the acts' aggregate effect.[1] *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992); *see also Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962). Recognizing the danger of falsely condemning innovation and competition, it should be "much more difficult to find overall wrongdoing" when considering only "a number of perfectly legal acts." *Id.* Even "a finding of some slight wrongdoing in certain areas need not by itself add up to a violation" of section 2. *Id.* What matters is whether the "synergistic effect" of the alleged conduct is to harm competition, and thus perpetuate a monopoly. *Id.*; *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (en banc).

### B. The Motion for Reconsideration

The court previously held that while NAVTEQ was entitled to summary judgment on Tele Atlas's tying claims,[2] the alleged tying conduct could still be considered under section 2. *See Tele Atlas N.V. v. NAVTEQ Corp.*, C-05-01673, Docket No. 341, 43 (N.D. Cal. Oct. 28, 2008) ("SJ Order"). NAVTEQ argues that its alleged tying cannot be considered under section 2 because Tele Atlas cannot prove that the tying was unlawful. As demonstrated above, however, even lawful

---

[1] This inquiry has been more colorfully described elsewhere. The Seventh Circuit has explained the need to look at conduct in the aggregate because "[i]t is the mix of the various ingredients of utility behavior in a monopoly broth that produces the unsavory flavor." *City of Mishawaka, Ind. v. American Elec. Power Co., Inc.*, 616 F.2d 976, 986 (7th Cir. 1980). This is a vivid way of describing the inquiry, but it obscures the danger of false positives described in *Trinko*. Courts and juries must be careful in "tasting" the broth because the consequence is to throw out perfectly good soup.

[2] In its opposition to the motion for reconsideration, Tele Atlas suggests that the court erred in granting summary judgment on Tele Atlas's tying claims under the rule of reason. There was no error. *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 46 (2006) ("[W]e . . . hold that, in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."). Tele Atlas's failure to produce any evidence that NAVTEQ possessed market power in the alleged tying technology market doomed its tying claims, regardless of whether they arise under a *per se* or rule of reason rubric.

1  conduct can trigger section 2 liability.  Thus, Tele Atlas's failure to prove that NAVTEQ's alleged
2  tying conduct was unlawful does not automatically require that such conduct be removed from the
3  scope of the section 2 inquiry.

4  NAVTEQ cites two cases that require discussion.  In *Foremost Pro Color, Inc. v. Eastman
5  Kodak Co.*, the Ninth Circuit affirmed dismissal of a section 1 *per se* tying claim premised on a
6  technological change that made other products incompatible.  703 F.2d 534, 543 (9th Cir. 1992),
7  *overruled on other grounds, Chroma Lighting v. GTE Products Corp.*, 111 F.3d 653, 657 (9th Cir.
8  1997).  The plaintiff also asserted a section 2 claim premised on the alleged technological tying plus
9  Kodak's "continually researching and developing new photographic products." *Id.*  The court
10 affirmed the dismissal of the section 2 claim as well, noting that "[b]ecause the conduct Foremost
11 alleged in support of its section 1 tying claim is not anticompetitive, it is of no assistance to
12 Foremost's efforts to state a claim for relief for monopolization or attempted monopolization, both of
13 which require at least some allegation of anticompetitive conduct." *Id.*  Unsurprisingly, and
14 fortunately, the court also rejected the notion that Kodak's "continually researching and developing"
15 new products alone could constitute anticompetitive conduct. *Id.* at 544-45.  Because no allegation
16 of anticompetitive conduct survived, the court affirmed the dismissal of the section 2 claim.

17 NAVTEQ argues that this case broadly stands for the proposition that tying conduct that fails
18 to allege a section 1 claim "is of no assistance" in supporting a section 2 claim.  In so doing,
19 NAVTEQ reads too much into the case.  The court held that alleged tying conduct was not
20 anticompetitive, and that is why it was "of no assistance." *Id.* at 543.  Here, the court has made no
21 such finding regarding NAVTEQ's conduct; it has merely held that Tele Atlas failed to produce
22 evidence that the alleged tying conduct itself violated section 1.  On the contrary, NAVTEQ's tying
23 conduct, as alleged, may have been anticompetitive without being illegal.  This stems from the
24 synergistic effect created by NAVTEQ's alleged tying and its alleged exclusive dealing.  Both
25 courses of conduct purportedly foreclosed portions of the market that Tele Atlas sought to enter.
26 NAVTEQ, for example, allegedly used its exclusive licenses to prevent Tele Atlas from dealing with
27 Garmin, while using the threat of patent litigation to force TomTom and Navman into switching
28

ORDER DENYING NAVTEQ'S MOTION FOR RECONSIDERATION AND DENYING NAVTEQ'S MOTION *IN LIMINE*
REGARDING ANTICOMPETITIVE CONDUCT
No. C-05-01673 RS
TSF                                                                 4

from purchasing map data from Tele Atlas to purchasing from NAVTEQ. Tele Atlas failed to prove this latter course of conduct was illegal, but that is not the same as the court finding that NAVTEQ's course of conduct was not anticompetitive. On the contrary, when considered in concert with the exclusive dealing allegations, the combined allegations suggest a broad course of conduct designed to foreclose the market and prevent entry. This distinguishes the present case from *Foremost Color*, where none of the alleged conduct was anticompetitive, even when combined.

NAVTEQ also cites *Data General Corp. v. Grumman Systems Support Corp.*, where the First Circuit declined to consider various tying allegations in determining whether the plaintiff stated a section 2 claim. 36 F.3d 1147, 1182 & fn.61 (1st Cir. 1994). In *Data General*, the court held that the alleged tying arrangements *did not exist*. *Id.* Here, the court denied summary judgment on NAVTEQ's arguments that no tying condition existed. SJ Order at 21-25. The significance of this distinction is that in *Data General*, there was no tying arrangement that could prop up other allegations that could collectively appear anticompetitive. Here, there is an alleged tying arrangement. It is not alone enough to support a violation of section 1 (and likely not alone enough to plead a violation of section 2 given its present deficiency), but it does add something to Tele Atlas's other allegations of anticompetitive conduct.

The court has re-examined the case law developed under section 2. As discussed above, it supports permitting Tele Atlas to present evidence of NAVTEQ's tying conduct to the jury because that conduct, when combined with the alleged foreclosure due to NAVTEQ's exclusive dealing, may have had an anticompetitive effect. The court therefore denies the motion for reconsideration.

NAVTEQ also objected that any evidence about tying is irrelevant under Rule 401. For the reasons discussed regarding the scope of section 2, such evidence is logically relevant. NAVTEQ further argues that even if the evidence is relevant, it is unfairly prejudicial because of the substantial amount of trial time that will be expended dealing with the issue. The court overrules the objection. Any unfair prejudice caused by the tying evidence does not substantially outweigh its probative value.

## II.  EVIDENCE OF NAVTEQ'S OTHER CONDUCT

NAVTEQ also moves *in limine* to exclude evidence about its "moderately" exclusive data licenses, its volume discounts and minimum annual licensing fee provisions, and its attempts to create exclusive NAVTEQ-branded retail areas within stores like Best Buy and Circuit City. NAVTEQ first argues that none of this evidence is relevant to Tele Atlas's section 2 claim because none of this alleged conduct is illegal.  As discussed, legal conduct can still be anticompetitive (as in *Aspen Skiing* for example) and innocuous-looking conduct can, in combination with other conduct, be anticompetitive too.  The court therefore turns to consider how the additional alleged conduct relates to NAVTEQ's alleged exclusive dealing and tying.

The various contracting allegations – "moderately" exclusive licenses, minimum annual licensing fees, and volume discounts – are similar in character (though lesser in degree) to NAVTEQ's alleged exclusive dealing.  This alleged conduct could produce a synergy with the alleged exclusive dealing and tying because all of the conduct aims to tighten NAVTEQ's relationship with map data licensees and prevent Tele Atlas from peeling off NAVTEQ's customers. Therein lies the distinction between this case and those cited by NAVTEQ.  In *Bohack Corp. v. Iowa Beef Processors, Inc.* (a Robinson-Patman Act case, not a section 2 case), the court excluded evidence of the defendant's alleged bribery of union officials because it bore no relationship to the plaintiff's claims for price discrimination.  *See* 715 F.2d 703, 709-10 (2d Cir. 1991).  In *International Shoe Machine Corp. v. U.S. Machinery Corp.*, the court excluded evidence of International Shoe's infamous prior antitrust difficulties as "background evidence" because it was highly prejudicial and bore no relationship to the allegedly illegal conduct in the case at hand.  315 F.2d 449, 459-60 (1st Cir. 1963).  Unlike these (and similar cases), the licensing practices NAVTEQ seeks to exclude are contemporaneous to its other alleged conduct, involve the same customers, and logically could reinforce the effect of NAVTEQ's other conduct.

At the hearing, NAVTEQ aired concerns that permitting evidence regarding these additional licenses and their provisions would lead to "scores of mini-trials about individual contracts." NAVTEQ argued that this would prejudicially expand the scope of the case and the bases on which

the jury could identify liability. The court is less pessimistic. The additional contracts seem unlikely to each require lengthy exposition because while the licenses provisions vary, they are similar in nature and can be conveyed to the jury quickly and clearly. The court therefore cannot agree that NAVTEQ will suffer unfair prejudice from permitting Tele Atlas to introduce evidence regarding NAVTEQ's other licensing practices.

It is less clear how NAVTEQ's efforts to create branded retail sales areas affected competition in the map data market. Perhaps Tele Atlas can show that NAVTEQ hoped these efforts would prevent map data licensees who made personal navigation devices from switching to Tele Atlas because doing so would jeopardize their usual retail channels. It is also not clear what unfair prejudice inures to NAVTEQ if Tele Atlas chooses to delve into this evidence. Evidence relating to NAVTEQ's retail channels is not particularly confusing, and any time it wastes will come out of Tele Atlas's limited time for putting on its case. On the other hand, evidence related to NAVTEQ's retail efforts may be unfairly prejudicial (in relation to its probative value) because of its sensational and inflammatory nature. The evidence discussed at the hearing, without additional context, may be more explosive than its probative value merits. Accordingly, the court denies NAVTEQ's motion to exclude this evidence at this time, but NAVTEQ may choose to revisit the issue depending on how the evidence develops.

### III.  ORDER

For the foregoing reasons, the court denies the motions.

DATED:     11/13/08

RICHARD SEEBORG
United States Magistrate Judge

**Notice of this document has been electronically sent to:**

**Counsel for Tele Atlas:**
| | |
|---|---|
| Melissa J Baily | melissabaily@quinnemanuel.com |
| David Eiseman | davideiseman@quinnemanuel.com |
| Robert P. Feldman | rfeldman@wsgr.com |
| Kristin Janet Madigan | kristinmadigan@quinnemanuel.com |
| William Morehead | williammorehead@quinnemanuel.com |
| Emily Christina O'Brien | emilyobrien@quinnemanuel.com |

**Counsel for NAVTEQ:**
| | |
|---|---|
| David S. Bloch | dbloch@winston.com |
| Andrew Bridges | abridges@winston.com |
| David Koropp | dkoropp@winston.com |
| George Lombardi | glombardi@winston.com |
| Kevin Joon Oh | koh@winston.com |
| Megan Elizabeth Schaefer | mschaefer@winston.com |
| Dan Webb | dwebb@winston.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     11/13/08

                                                 **Chambers of Judge Seeborg**